UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRADEBANK INTERNATIONAL
FRANCHISING CORPORATION and
TRADEBANK INTERNATIONAL INC.,

    Plaintiffs,

v.

FLORIDA BARTER EXCHANGE, LLC,
TAIT CARSON, and JOHN DOE
CORP. d/b/a BARTER EDWARDS,

    Defendants.

CIVIL ACTION

NO. 1:12-CV-2810-RLV

O R D E R

This action involves claims by a franchisor against a franchisee as a result of the franchisee's alleged breaches of restrictive covenants contained in the franchise agreements. This matter comes before the court on the plaintiffs' motion for a preliminary injunction [Doc. No. 16].

I. Factual Background

Plaintiff Tradebank International is engaged in the process of barter transactions and various bookkeeping functions for clients across the United States. Plaintiff Tradebank International Franchising is a wholly-owned subsidary of plaintiff Tradebank International. Plaintiff Tradebook International Franchising is a franchising company which provides franchising opportunities for

regional barter exchange businesses across the United States and abroad. Plaintiff Tradebank International processes barter transactions for the members of these franchised regional barter exchanges. Defendant Tait Carson is the sole owner and is an agent of a company doing business as the Florida Barter Exchange. Until August 2, 2012, defendant Florida Barter Exchange was the owner of the Orlando, Altamonte Springs, Leesburg, and Tampa Tradebank franchises pursuant to written franchise agreements. Plaintiff Tradebank International is a third-party beneficiary of the franchise agreements.

The franchise agreements provide in relevant part:

5. Restrictive Covenants

Franchisee agrees and acknowledges that Tradebank's name, the System, reputation associated therewith, the methods and techniques employed by Tradebank, the training and instruction provided, the knowledge of the services and methods of Tradebank, and the opportunities, associations and experience established and acquired by Franchisee, hereunder and as a member of the System are of considerable value. Franchisee therefore agrees that Franchisee will execute a Restrictive Covenants Agreement as a part of this Franchise Agreement and will cause each of the Franchisee's principals, employees and independent contractors to execute Tradebank's current standard Non-Competition Agreement.

A. Restrictive Covenants. During the term hereof and for a period of twelve (12) months following the transfer or expiration of this Agreement, or its termination for any reason whatsoever, Franchisee and any guarantors of this Agreement, covenant and agree that they shall not, either

directly or indirectly, on Franchisee's own behalf or in the service of or on behalf of others, within the Territory, engage in any of the following activities:

(1) Engage in any business which is the same as, or essentially the same as, the Franchised business;

(2) Solicit, divert or appropriate to any competing business or attempt to solicit, divert or appropriate to or for any competing business, and any customer or prospective customer of Tradebank with whom Franchisee or guarantor had contact during the term hereof; or

(3) Solicit, divert or entice, or attempt to solicit, divert or entice, to any competing Business, any person engaged by Tradebank as an Independent Contractor is employed or engaged on a temporary basis or whether or not such employment or engagement is made pursuant to written agreement, for a determined period, or at will.

B. Nondisclosure

During the term hereof and for a period of two (2) years following the transfer or expiration, or the termination of this Franchise Agreement for any reason whatsoever, Franchisee covenants and agrees that Franchisee shall not copy, use, disclose or make available directly or indirectly, to any person, concern or entity, any of Tradebank's confidential information except in the proper performance of the duties and responsibilities of the Franchisee under the Franchise Agreement.

Franchisee shall indemnify and hold Tradebank harmless from any and all damages and expenses (including, without limitation reasonable attorney's fees) arising directly or indirectly from (i) Franchisee's breach of this Section 5, or (ii) from any employee's violation of any applicable provision of any Non-Competition Agreement signed by such employee.

C. Injunctive Relief. Franchisee acknowledges that, in the event that Franchisee breaches any of the foregoing covenants, Tradebank will be without an adequate remedy at law and could suffer irreparable harm. Accordingly,

3

> Franchisee agrees that Tradebank has a right, in addition to other available remedies to it at law or in equity, to enjoin the Franchisee and Franchisee's employees in a court of equity from violating or threatening to violate such provisions and to recover all reasonable attorney's fees incurred by Tradebank thereby.

According to the plaintiffs, the defendants recently started a competing business and have actively solicited and diverted dozens of the plaintiffs' customers to such business. Specifically, the plaintiffs state that defendant Carson established a competing barter exchange named "Barter Rewards." According to the plaintiff, defendant Carson sent a mass email entitled "Barter Rewards Announcement" to numerous Tradebank franchisees and customers on August 2, 2012. The August 2, 2012 email listed the Barter Rewards website and a link to the Barter Rewards Facebook page. The email informed Tradebank franchisees' customers that Carson was "leaving" Tradebank. Specifically, the August 2, 2012 email stated:

> The time has come after three and a half years for me to leave Tradebank.
>
> I wish ya'll success and happiness.
>
> If you need to reach us in the future please see us at www.barterrewards.com

(Plaintiffs' Motion for Preliminary Injunction, Ex. 19-1 [Doc. No. 16]).

4

According to the plaintiffs, the August 2, 2012 email was the first instance in which defendants Florida Barter Exchange and Carson had notified the plaintiffs that they intended to abandon the Florida franchises. Furthermore, the plaintiffs allege that the defendants had made no previous arrangements with Tradebank despite their intent to abandon the Florida franchises. Thereafter, the plaintiffs allege that they were forced to take over the management of the Florida franchises in order to preserve the value of those franchises and protect its customers. Moreover, the plaintiffs argue that the Florida franchises were seriously damaged by the defendants' actions.

According to the plaintiffs, many clients of the Florida franchises began to do business with defendant Barter Rewards after the August 2, 2012 email from Carson. In their motion, the plaintiffs allege that they received notice of dozens of account cancellations dated in late July and August 2012, which coincided with defendant Carson's August 2, 2012 email. According to the plaintiffs, the defendants solicited and signed former clients of the Florida franchisees to accounts with Barter Rewards. The plaintiffs further allege that Carson told such customers that he would convert their existing barter balances with Tradebank into credit balances with Barter Rewards. Lastly, the plaintiffs allege

5

that the defendants used confidential information, including the client list of the Florida franchises to establish Barter Rewards.

In their motion, the plaintiffs seek to enjoin the defendants from operating a competing business, from soliciting and diverting customers of the plaintiffs to the defendants' newly-created competing business, from doing further business with such customers who have previously been unlawfully solicited and diverted, and from otherwise violating the terms of their franchise agreements with the plaintiffs.

In response, the defendants argue that the restrictive convents contained in the franchisee agreement are unenforceable because of the plaintiffs' misrepresentations and omissions which induced the defendants to sign the agreements. Furthermore, the defendants argue that the plaintiffs materially breached the franchisee agreements. Additionally, the defendants argue that the plaintiffs are not entitled to any injunctive relief because the plaintiffs failed to satisfy the four legal requirements to receive injunctive relief.

## II. Legal Standard of Review

A district court may grant injunctive relief where the movant shows: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury without the injunction; (3)

6

that the threatened injury to the plaintiff if the injunction is not granted outweighs the threatened injury to the plaintiff if the injunction is granted; and (4) that the injunction would not be adverse to the public interest. <u>Alabama v. U.S. Army Corps of Eng'rs</u>, 424 F.3d 1117, 1128 (11th Cir. 2005).

In the Eleventh Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion" as to the four requisites. <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1306 (11th Cir. 1998); <u>All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.</u>, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); <u>Texas v. Seatrain Int'l, S.A.</u>, 518 F.2d 175, 179 (5th Cir. 1975) (granting a preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion).

The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1342 (11th Cir. 1994); <u>see</u> <u>also</u> <u>Siegel v. Lepore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary

injunctive relief improper"). "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.'" Ne. Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl., 896 F.2d 1283, 1284 (11th Cir. 1990).

### III. Legal Analysis

Having reviewed the parties' pleadings, the court concludes that the plaintiffs are not entitled to the preliminary injunction that they seek.

Specifically, the court concludes that the plaintiffs have not demonstrated a substantial likelihood of success on the merits on any of their claims. Specifically, the court notes that there is a factual dispute in the record regarding which party breached the franchise agreement. If a jury were to believe the defendants' versions of the facts, the plaintiffs would not be entitled to injunctive relief. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1232 (11th Cir. 2005)(noting that to demonstrate a substantial likelihood of success on the merits, the moving party must make a showing of likely or probable, but not certain, success at trial).

Moreover, a jury could conclude that the August 2, 2012 email from Carson and Barter Exchange to Tradebank customers did not

contain an affirmative solicitation of the Florida Tradebank customers to do business with Barter Rewards. Instead, a jury could conclude that the August 2, 2012 email merely informed Carson's former customers of his new location and new business without soliciting them to do business with Barter Rewards. While it is true that some of Carson's former customers from the Florida franchises may have become new customers of Barter Rewards after this email, a jury also reasonably could conclude that Carson's former Tradebank customers freely elected to associate themselves with Carson and Barter Rewards. Furthermore, a jury could conclude that the defendants did not take affirmative action to solicit his former clients from the Florida franchises to his new business.

In its motion, the plaintiffs also allege that the defendants used the plaintiffs' confidential information to establish Barter Rewards. However, a jury could conclude that the plaintiffs failed to prove that the defendants improperly used confidential information or Tradebank's client lists to start Barter Rewards based on the evidence in the record at this juncture.

In reaching these conclusions, the court strongly relied upon the declaration submitted by defendant Carson. In this declaration, defendant Carson alleges that the plaintiffs breached numerous provisions of the franchise agreement. According to

9

defendant Carson, the plaintiffs should not be able to breach the franchise agreement and then be able to enjoin the defendants from operating his new business. Furthermore, defendant Carson argues that there is no evidence that the defendants solicited any independent contractors or that the defendants disclosed any trade secrets in violation of the terms of the franchise agreement. As stated above, each of the plaintiffs' claims would fail if the jury were to believe defendant Carson.

Having found the plaintiffs have failed to satisfy the first requirement for a preliminary injunction, the court need not consider the other factors. Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994). Because the plaintiffs have failed to demonstrate a substantial likelihood of success on the merits on their cause of action for an injunction based on breach of the restrictive covenants contained in Section 5 of the franchise agreement, the court DENIES the plaintiffs' motion for a preliminary injunction [Doc. No. 16].

SO ORDERED, this __7TH__ day of January, 2013.

_____
ROBERT L. VINING, JR.
Senior United States District Judge